UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-346-GWU

FREDA KAY KINNEY,                                                             PLAINTIFF,

VS.                         **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

## INTRODUCTION

      Freda Kinney originally brought <u>Kinney v. Astrue</u>, London Civil Action No. 06-406 (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income.  After a period of administrative reconsideration prompted by the court's Memorandum Opinion, Order, and Judgment of September 12, 2007 (Tr. 514-520), it is again before the court on cross-motions for summary judgment.

## APPLICABLE LAW

      Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); <u>Crouch v. Secretary of Health and Human Services</u>, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a

1

whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient,

08-346  Freda Kay Kinney

if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Kinney, a 47-year-old former nurse's aide with a high school equivalent education, suffered from impairments related to insulin dependent diabetes mellitus, generalized anxiety disorder, chronic depressive disorder, dysthymia and avoidant traits. (Tr. 483, 489-490). Despite the plaintiff's impairments, the ALJ determined that the plaintiff retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 487). Since the claimant's past relevant work as it is generally performed in the economy could still be done, she could not be considered totally disabled. (Tr. 489). As an alternative, the ALJ also concluded that a significant number of other jobs could be performed. (Tr. 490). Therefore, the claimant could not be considered totally disabled. (Tr. 490-491).

4

08-346  Freda Kay Kinney

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

This action was previously remanded by the undersigned because the ALJ erroneously relied upon Rule 203.29 of the Medical-Vocational guidelines despite the existence of a number of non-exertional restrictions.  (Tr. 517-518).  The ALJ had concluded that Kinney's past relevant work could not be performed.  (Tr. 277). Upon remand, this error has been cured.

In determining that Kinney could return to her past work as a nurse's aide, the ALJ relied heavily upon the information provided by Vocational Expert James Miller.  The hypothetical question included an exertional limitation to medium level work restricted from a full range by such non-exertional limitations as (1) an inability to sit for more than five hours continuously in an eight-hour day; (2) an inability to stand for more than two hours continuously and a total of six hours a day; (3) an inability to walk for more than one hour a day and a total of four hours a day; (4) an inability to more than occasionally bend, squat, or crawl; (5) an inability to ever climb; (6) an inability to frequently reach over the shoulder; (7) a "mild" restriction concerning exposure to moving machinery; (8) a "moderate" restriction concerning exposure to unprotected heights; (9) a "limited but satisfactory" ability in following work rules, relating to co-workers, dealing with the public, using judgment, interacting with supervisors, dealing with work stresses, functioning independently,

maintaining attention and concentration, carrying out detailed instructions, maintaining personal appearance, behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability; (10) a "more than satisfactory" ability to carry out simple instructions, and (11) a "seriously limited but not precluded" ability to carry out complex instructions. (Tr. 761).  In response, Miller testified that the plaintiff's past work, as it was performed generally in the economy, could still be performed.  (Tr. 761-762).  The expert also cited a significant number of other jobs which could still be performed.  (Tr. 762). Therefore, assuming that the vocational factors considered by Miller fairly characterized the claimant's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  Dr. Kevin Croce examined Kinney and found that her physical and orthopedic examinations were essentially within normal limits.  (Tr. 314).  Dr. Croce specifically noted finding no limitations with regard to sitting, standing, moving about, handling objects, hearing, seeing, speaking, and traveling.  (Id.).  The extensive physical limitations of the hypothetical question were consistent with this opinion.  More severe physical limitations than those found by the ALJ were also not reported by such treating and examining sources as the staff at Appalachian Regional Healthcare (Tr. 108-141, 196, 205-225, 328-433, 446-459, 539-590, 602-607, 663-718), the staff at the Cloverfork Clinic (Tr. 142-144, 197-204,

435-445, 535-538), and Dr. Abdulkader Dahhan (Tr. 145-146, 606-635).  The plaintiff does not raise any issues concerning the ALJ's treatment of the evidence relating to her physical condition.  Therefore, substantial evidence supports this portion of the administrative decision.

The ALJ also dealt properly with the evidence relating to Kinney's mental condition.  In assessing the plaintiff's mental status, the ALJ relied upon the opinion of Psychologist Vincent Dummer, an examining consultant.  (Tr. 489).  Dummer reported a diagnostic impression of dysthymia and avoidant traits.  (Tr. 323).  The plaintiff's mental condition was rated as "fair," defined as "ability to function in this area is limited but satisfactory" in such areas as following work rules, relating to co-workers, dealing with the public, using judgment, interacting with supervisors, dealing with work stresses, functioning independently, maintaining attention and concentration, handling detailed instructions, maintaining personal appearances, behaving in an emotionally stable manner, and demonstrating reliability.  (Tr. 324-325).  The claimant's ability was rated as "poor" only in the area of handling complex job instructions.  (Tr. 325).  These restrictions were presented to the vocational expert.

Kinney asserts that Dummer's narrative report was inconsistent with the relatively modest findings noted on the assessment form.  However, the examiner reported in the narrative portion of his report that the plaintiff's speech was relevant and coherent during the interview. (Tr. 320). She was noted to be alert. (Id.). The

7

08-346  Freda Kay Kinney

claimant was reported to be independent in her activities of daily living.  (Tr. 321). She related in appropriate manner with the examiner.  (Id.).  The psychologist found only mild symptoms of depression.  (Tr. 322).  There were no reports of anxiety, phobias, substance abuse, manic behavior, post-traumatic stress disorder, or symptoms of a thought disorder.  (Tr. 322-323).  Dummer indicated that the claimant would be able to handle simple instructions.  (Tr. 323).  She would have a "fair" ability to get along with others and some difficulties tolerating stress and pressures. (Id.).  These restrictions are essentially consistent with the assessment, which included a "fair" restriction on relating to co-workers, dealing with the public, interacting with supervisors and relating predictably in social situations as well as a "fair" limitation regarding dealing with work stresses.  (Tr. 324-325).  The only possible discrepancy concerns the Global Assessment of Functioning (GAF) rating of 50 indicated by Dummer.  (Tr. 323).  Such a GAF suggests the existence of "serious" psychological symptoms according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.  The court notes that this rating was for "current" status only and would not necessarily indicate a disabling condition meeting the one-year durational requirement of the Social Security Act.  20 C.F.R. § 404.1505(a).  Under these circumstances, the court finds no error.

During the processing of this appeal, Kinney was also examined by Dr. Kevin Eggerman.  (Tr. 151-156).  Dr. Eggerman noted a "fair" ability in such areas as

8

dealing with complex instructions, relating to co-workers and supervisors, persisting on tasks and tolerating stress.  (Tr. 155-156).  The hypothetical factors were compatible with this opinion.

Psychologists Jay Athy (Tr. 157-160) and Edward Stodola (Tr. 161-164) each reviewed the record and opined that Kinney would be "moderately" limited in handling detailed instructions, maintaining attention and concentration for extended time periods and responding appropriately to changes in the work setting.  These restrictions also appear essentially consistent with those included in the hypothetical question.

Kinney sought treatment for her mental complaints at the Cumberland River Comprehensive Care Center (Tr. 641-662, 719-729).  More severe mental limitations than those found by the ALJ were not identified by the staff.  These reports provide substantial evidence to support the administrative decision.

Psychologist Robert Spangler examined Kinney and diagnosed a generalized anxiety disorder, a depressive disorder and developing agoraphobic traits.  (Tr. 595).  The Spangler identified a number of very severe mental limitations including "no useful ability" to deal with the public, deal with work stresses, handle complex or detailed instructions, and demonstrative reliability.  (Tr. 599-600).  The ALJ rejected Spangler's opinion in favor of that of Dummer. (Tr. 489).  The court agrees that this action was appropriate.   While the claimant complains about an inconsistency in Dummer's report concerning his modest mental restrictions and low

08-346  Freda Kay Kinney

GAF rating, the undersigned notes that a similar inconsistency exists between the very severe mental limitations identified on Spangler's assessment and his GAF rating of 55 (Tr. 596), which suggests the existence of only "moderate" mental restrictions.  The court notes that Spangler is also not consistent with the opinions of Dr. Eggerman, the medical reviewers or the treating staff at Cumberland River.  Therefore, the court finds that the ALJ properly rejected this opinion.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 22nd day of September, 2009.

Signed By:
**G. Wix Unthank**
**United States Senior Judge**